**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0007-WJM

PATRICK E. LEDBETTER,

      Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,[1]

      Defendant.

---

**ORDER VACATING AND REMANDING ADMINISTRATIVE
LAW JUDGE'S DENIAL OF SOCIAL SECURITY BENEFITS**

---

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Patrick E. Ledbetter ("Ledbetter" or "claimant") challenges the final decision of

Defendant, the Social Security Administration (the "Administration"), denying his

application for disability insurance benefits and supplemental security income benefits

(collectively, "Social Security benefits").  The denial was affirmed by an administrative

law judge ("ALJ"), who ruled that Ledbetter was not disabled within the meaning of the

Social Security Act.  This appeal followed.

For the reasons set forth below, the ALJ's decision is vacated and this case is

remanded to the Administration for further proceedings consistent with this Order.

---

[1] The Social Security Administration no longer has a commissioner nor a lawful acting
commissioner.  *See* Letter from Thomas H. Armstrong, General Counsel of the Government
Accountability Office, to President Donald Trump (Mar. 6, 2018), *available at*
https://www.gao.gov/assets/700/690502.pdf (last accessed Jan. 18, 2019).  Lacking any other
alternative, the Court *sua sponte* substitutes the Social Security Administration itself as the
proper defendant.

# I. BACKGROUND

Ledbetter was born in 1968 and was 45 years old on the alleged onset date of October 1, 2013.[2] (Administrative Record ("R.") [ECF No. 11] at 93, 104.) His highest level of educational achievement is a General Educational Development (GED) certificate. (R. at 102, 113.) In the fifteen years preceding the alleged onset date, he worked as a knife operator, forklift operator, rail operator, yard manager, yard dispatcher, yard supervisor, and deliveryman. (R. at 101, 112.)

Ledbetter applied for disability insurance benefits on July 14, 2014 (R. at 178), and for supplemental security income on July 31, 2014 (R. at 180). He claimed that he is disabled due to diabetic neuropathy in his hands, diabetes, schizoaffective disorder, bipolar disorder, and depression. (R. at 93, 104.) The Administration denied Ledbetter's applications on September 15, 2014. (R. at 102–03, 113–14.) Ledbetter requested and received a hearing in front of an Administrative Law Judge, Matthew C. Kawalek. (R. at 51, 121.) That hearing took place on September 7, 2016. (R. at 51.) On November 8, 2016, the ALJ issued a written decision in accordance with the Administration's five-step sequential evaluation process.[3] (R. at 21.)

At step one, the ALJ found that Ledbetter had not engaged in substantial gainful

---

[2] It appears that Ledbetter subsequently changed his alleged onset date to October 1, 2014. (*See* R. at 207.) For the purpose of this Order, however, this change is immaterial.

[3] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his or her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

activity since October 1, 2013.  (R. at 26.)

At step two, the ALJ found that Ledbetter "has the following severe impairments: diabetes with neuropathy, bilateral carpal tunnel syndrome, lumbar degenerative disc disease, syncope, obesity, schizoaffective disorder, anxiety disorder, depression, and opioid dependence."  (*Id.*)

At step three, the ALJ found that Ledbetter's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations.  (R. at 28.)

Before proceeding to step four, the ALJ assessed Ledbetter's residual functional capacity ("RFC").  The ALJ concluded that Ledbetter has the RFC

> to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) meaning that the claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently.  The claimant can stand and/or walk for two hours out of an eight-hour day and **sit for six hours out of an eight-hour day** ["six-hour sitting limitation"].  The claimant can frequently operate hand and foot controls bilaterally.  The claimant can never climb ladders, ropes, or scaffolds and can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs.  The claimant can frequently handle, finger, and feel bilaterally.  The claimant can tolerate no exposure to hazards.  The claimant should not be subject to a production rate pace, such as assembly line work.

(R. at 31 (emphasis added).)  Then, at step four, the ALJ concluded that Ledbetter's RFC precludes him from returning to his past relevant work.  (R. at 41.)

At step five, the ALJ found that Ledbetter's RFC permits him to work as a food and beverage order clerk, a charge account clerk, and a microfilm document preparer.  (R. at 42.)

Accordingly, the ALJ found that Ledbetter was not entitled to disability insurance

3

benefits or supplemental security income benefits.  (R. at 42–43.)  Ledbetter appealed

to the Social Security Appeals Council, which denied review on November 21, 2017.

(R. at 1.)  Ledbetter then filed this action seeking review of the ALJ's November 8, 2016

decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Administration's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is the amount of relevant evidence that a reasonable mind might

accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but

less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is

overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257,

1261–62 (10th Cir. 2005).

In reviewing the Administration's decision, the Court may neither reweigh the

evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468

F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct

legal test, there is a ground for reversal apart from a lack of substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Ledbetter presents two arguments for vacating the ALJ's decision: (1) the ALJ

did not have valid reasons for rejecting Dr. Danylchuk's four-hour sitting limitation; and

(2) the ALJ's finding that Ledbetter has the RFC to sit for six hours per day is not

supported by substantial evidence.  (ECF No. 14 at 4.)  Since the Court finds the

second argument to be dispositive, it need not address Ledbetter's first argument.

Nonetheless, Dr. Danylchuk's opinions remain relevant for context.

**A.     Dr. Danylchuk**

On June 25, 2015, Ledbetter began seeking medical care from Dr. Danylchuk,

an orthopedic surgeon.  (R. at 682.)  At this initial consultation, Ledbetter complained of

intense pain in his left hip and lower back.  (R. at 683.)  After examining Ledbetter, Dr.

Danylchuk recommended that a Magnetic Resonance Imaging (MRI) scan be taken of

Ledbetter's lumbar spine.  (R. at 683–84.)  On July 14, 2015, Dr. Danylchuk reviewed

the MRI results with Ledbetter.  (R. at 680.)  The MRI showed "moderate spinal

stenosis at the L3-4 level" and as a result, Dr. Danylchuk recommended that Ledbetter

receive "lumbar epidural steroid injections."  (*Id.*; *see* R. at 479–80.)

On April 26, 2016, Dr. Danylchuk reexamined Ledbetter and found that he now

had "severe spinal stenosis" on two levels of his lumbar spine.  (R. at 694.)  Dr.

Danylchuk opined that the spinal stenosis caused Ledbetter constant pain and hindered

him from getting comfortable or sleeping.  (*Id.*)  As a result, Ledbetter agreed to

undergo "a two level laminectomy, discectomy, and interbody fusion."  (*Id.*)  Before

surgery took place, Dr. Danylchuk opined that Ledbetter could lift and carry up to ten

pounds, sit for four hours per day ("four-hour sitting limitation"), stand for two hours per

day, and could occasionally stoop, squat, crawl, and kneel.  (R. at 691–92.)  Dr.

Danylchuk stated that these limitations had applied since January 2015.  (R. at 692.)

On September 8, 2016, Ledbetter underwent the spine fusion surgery.  (*See* R. at 61.)

**B.     Oral Hearing before the ALJ**

During the hearing, the ALJ asked the vocational expert whether an "individual of the claimant's age, education, and work history" would be able to "perform any of the jobs in the national and regional economies" if the individual was limited by the restrictions Dr. Danylchuk had imposed upon Ledbetter but with a six-hour sitting limitation.  (R. at 86.)  The vocational expert responded that there are at least three jobs the individual could perform.  (R. at 86–87.)  The ALJ asked whether the vocational expert's answer would change if the individual had instead a four-hour sitting limitation. (R. at 87.)  The vocational expert responded that her answer would change since there are no jobs the individual could perform with such limitations.  (*Id.*)  Moreover, the vocational expert testified that regardless of whether the hypothetical individual had a sitting limitation of four hours or six, the individual could not perform any of the claimant's past jobs.  (R. at 86–87.)

After the hearing, it was evident that Ledbetter would pass step four regardless of which sitting limitation applied (assuming the ALJ adopted Dr. Danylchuk's other limitations).  Whether Ledbetter would pass step five, however, hinged on the ALJ's determination of how long Ledbetter could sit per day.  If the ALJ found that Dr. Danylchuk's limitations should apply in whole (which would include the four-hour sitting limitation), then Ledbetter would pass step five and be entitled to Social Security benefits since there would be no jobs he could perform.  However, if the ALJ found that Dr. Danylchuk's limitations applied but increased the sitting limitation to six hours per day, then Ledbetter would not survive step five, and thus not be entitled to Social Security benefits, since there would be at least three jobs he could perform.

## C.    The ALJ's Decision

In his written decision, the ALJ found Dr. Danylchuk to be a "treating physician"

who "is very familiar [with] the claimant's condition."  (R. at 38.)  Accordingly, the ALJ

gave "significant weight" to Dr. Danylchuk's opinion.  (*Id.*)  The ALJ approved of the

limitations that Dr. Danylchuk had imposed on Ledbetter *except* for the four-hour sitting

limitation, which he increased to six hours.  (R. at 31, 38.)  In rejecting Dr. Danylchuk's

four-hour sitting limitation, the ALJ provided the following explanation:

> [T]he record is not consistent with the opinion that the
> claimant can only sit for four hours.  Indeed, there is no
> evidence in the record that he has any significant functional
> limitations with sitting, and Dr. Danylchuk does not provide
> any guidance on why the claimant would be expected to be
> limited to sitting for more than four hours.  In the Function
> Report, the claimant did not report any difficulty with sitting.
> Indeed, Dr. Danylchuk appears to manufacture this limitation
> out of thin air without any support.  While the large portion of
> his opinion is consistent with the overall record, the reduced
> sitting limitations are not supported by the longitudinal
> record, including Dr. Danylchuk's own treatment records.

(*Id.* (citations omitted).)

The ALJ also discusses in his written decision how he determined that Ledbetter

had the RFC to sit for six hours a day.  The ALJ's support for this finding centers on his

finding that "the medical evidence suggests that the claimant's impairments are not as

debilitating as alleged."  (R. at 35; *see* R. at 33, 35–38.)  In particular, the ALJ noted

that while "Dr. Danylchuk found mild irritability of the left hip and mild pain with external

rotation" during his first examination of Ledbetter, he "also found an intact neurological

7

examination, excellent power, and well-functioning hips and knees."[4]  (R. at 35.)  In addition, the ALJ highlighted how approximately four months later, a physician assistant (PA) "noted that the claimant ambulated slowly without a limp and found mild tenderness to the midline and paravertebral lumbar areas, no muscle spasms, negative straight leg raises, the ability to stand on heels and toes, and intact motor sensory examinations of the lower extremities."  (*Id.*)

The ALJ also found that "the claimant's activities of daily living are greater than what one would expect of [a] fully disabled individual."  (*Id.*)  For example, the ALJ noted how the claimant had reported that "he could care for his personal needs," "drive a car," "shop for groceries twice a week with family," regularly attend church, and go to "his nephew's soccer and football games."  (*Id.*)  Moreover, the ALJ found that the "medical records also show greater than alleged function."  (*Id.*)  For instance, the ALJ noted that in 2014, Ledbetter had requested a "refill of his medications . . . because he was planning on leaving town for three months."  (*Id.*)  In addition, the ALJ noted how Ledbetter's 2014 records indicated that he "had a girlfriend and a job interview."  (*Id*.)

The ALJ also found that "the reported location, duration, frequency, and intensity of the alleged symptoms [are] not supported by the longitudinal record."  (R. at 36.)  In regard to his finding that the four-hour sitting limitation and Ledbetter's back problems are not supported by the longitudinal record, the ALJ stated the following:

---

[4] The ALJ's discussion of how "the medical evidence suggests that the claimant's impairments are not as debilitating as alleged" only addresses Ledbetter's initial consultation with Dr. Danylchuk and, significantly, makes no mention of later examinations (or MRI results) where Dr. Danylchuk determined that Ledbetter's back condition had become more severe.  (R. at 35; *see* R. at 454, 479–480, 694.)

[Ledbetter] did receive epidural steroid injections in his back in August and October 2015 without relief. He further reportedly wanted to pursue a lumbar fusion in April 2016 as a result of his reported failed conservative treatment. He briefly reported using a walker in April 2015, but the longitudinal record does not show ongoing usage of the assistive device. He also received diabetic shoes in April 2016 to help him with his ambulation.

(R. at 37 (citations omitted).)

After discussing how the evidence suggests that Ledbetter's impairments are not as debilitating as he alleges, the ALJ made the following finding:

[W]hile the record shows that the claimant has some issues relating to his physical and mental impairments, it contains no credible evidence showing that the claimant's impairments were of the type or nature that would have precluded all employment by the claimant during the relevant period and thus require findings of disability. As such, I have limited the claimant to the **sedentary exertional level**[5] with the additional postural, manipulative, and environmental restrictions due to his physical impairments.

(*Id*. (emphasis added).) Thus, the ALJ appears to be saying, in a less direct manner, that since he did not find the alleged impairments to be severe enough to preclude all employment, Ledbetter's RFC would be set at a level where he would be found to be employable.

Accordingly, the ALJ accepted the limitations that Dr. Danylchuk had imposed on Ledbetter, however, he increased the sitting limitation to six hours. (R. at 31.) Through this increase, the ALJ was able to make the determination that Ledbetter was

---

[5] In limiting Ledbetter to the "sedentary exertional level," the ALJ appears to have defaulted to the definition of "sedentary work" provided by Social Security Ruling 83-10. *See* SSR 83-10, 1983 WL 31251 at *5 ("[A]t the sedentary level of exertion . . . sitting should generally total approximately 6 hours of an 8-hour workday.").

employable.  (*See* R. at 86–87.)  Thus, at step five the ALJ found that Ledbetter could perform at least three jobs and therefore was not disabled.  (R. at 42–43.)

**D.      The ALJ's Sitting Limitation Is Not Supported By Substantial Evidence**

An ALJ's findings regarding the RFC must be supported by substantial evidence, *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999), and based on all of the relevant evidence in the record, *see Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  "Although the ALJ is entitled to draw reasonable inferences, his presumptions, speculations and suppositions should not be substituted for evidence."  *Pinnt v. Chater*, 988 F.Supp. 1354, 1360 (D. Colo. 1997) (citing Soc. Sec. Rep. Serv., Rulings 1983–1991)).  Moreover, "[a]n ALJ cannot substitute [his] lay opinion for that of a medical professional."  *Lax*, 489 F.3d at 1089.

In his brief, Ledbetter argues that the ALJ's finding that he has the RFC to sit for six hours per day was not supported by substantial evidence.  (ECF No. 14 at 22.)  In particular, Ledbetter asserts that Dr. Danylchuk was the "only physician who addressed [Ledbetter's] physical restrictions" and "sitting capacity" and that his opinion was "uncontroverted."  (*Id.*)  Ledbetter claims that while the ALJ's RFC findings did not have to mirror Dr. Danylchuk's medical opinion, they "must be supported by substantial evidence."  (*Id.*)  Ledbetter asserts, however, that he "cannot find any evidence in the record to support the ALJ's six hour sitting limitation."  (*Id.* at 22–23.)

In its response, the Administration claims that the ALJ's sitting limitation was in fact supported by substantial evidence.  (ECF No. 15 at 6.)  It is unclear, however, what

evidence the Administration is referring to in its response.  (*See id.* at 5–12.)  After a

thorough examination of the document, it appears the Administration is referring to

evidence in the record that pertains to Ledbetter's physical capabilities and the ALJ's

argument that Ledbetter's impairments were not as debilitating as alleged.  (*Id.*)

　　　After a careful review of the record, the Court finds it clear that the ALJ did not

have substantial evidence to support his finding that Ledbetter had the RFC to sit for six

hours per day.  Instead of supporting this finding with evidence that pertained to

Ledbetter's sitting capacity, the ALJ used evidence that, in the ALJ's opinion,

"suggested" Ledbetter's impairments were not as debilitating as alleged.

　　　This evidence included Ledbetter's initial examination, where Dr. Danylchuk

"found an intact neurological examination, excellent power, and well-functioning hips

and knees."  (R. at 35; *see* R. at 457.)  In addition, the ALJ relied on evidence that

centered on his speculation that Ledbetter's daily activities were "greater than what one

would expect of [a] fully disabled individual."  (R. at 35.)  This included reports in the

record discussing how Ledbetter could drive a car, attend church, go to family sporting

events, go on vacations, be in a relationship, and engage in other normal activities.  (R.

at 35–36.)  Such evidence, however, clearly does not pertain to Ledbetter's sitting

capacity, or to the ALJ's finding that a six-hour sitting limitation would be more

appropriate.  Instead, it is merely evidence that could be interpreted to support the

argument that Ledbetter's impairments were not as debilitating as alleged.

　　　The *only* evidence in the record that addresses Ledbetter's sitting capacity was

Dr. Danylchuk's evaluation, where he opined that Ledbetter should only sit for four

hours a day, and Ledbetter's testimony, where he claimed that he can only sit for short

periods of time because of back cramps and leg pains.  (R. at 69–70, 691.)  The Court

cannot find (and the Administration does not point to) any evidence that contradict's Dr.

Danylchuk's medical opinion that Ledbetter should only sit for four hours a day or that

supports the ALJ's finding that a six-hour limitation would be more appropriate.  Thus,

the ALJ's finding that Ledbetter has the RFC to sit for six hours per day was not

supported by substantial evidence.

The Administration also claims that Ledbetter was incorrect in stating that the

ALJ was required to identify specific evidence that showed he could sit for six hours per

day.  (*Id.* at 11.)  The Administration asserts that since Ledbetter bore the burden of

proof at the RFC stage, he was responsible for identifying evidence to support his claim

for disability.  (*Id.*)  Thus, the Administration asserts that Ledbetter "cannot fail to

provide evidence supporting his claim and then blame the ALJ for not having that

evidence."  (*Id.* at 11–12.)  In addition, the Administration argues that the "record does

not need to show 'specific, affirmative, medical evidence' as to each aspect of the

RFC."  (*Id.* at 11.)  Instead, it asserts that the ALJ was only required to thoroughly

review the evidence in the record.  (*Id.*)  The Administration also claims that the ALJ

fulfilled his obligation when he reviewed "the medical evidence in detail, Plaintiff's

testimony, and the other evidence in the record he relied upon."  (*Id.*)

The Administration's arguments, however, are misguided.  While it is true that

Ledbetter bore the burden of proof at the RFC stage, which he met by coming forward

with evidence that supported a four-hour sitting limitation, it was not his burden to

prevent the ALJ from reaching a conclusion based on speculation and unsupported by

any evidence.  If Ledbetter had presented evidence that supported a four-hour sitting

limitation and then argued that a different (and more restrictive) sitting limitation applied,

then the Administration's argument would be on point, and Ledbetter would be

responsible for identifying evidence to support that sitting limitation.  This, however, did

not occur, as Ledbetter is not arguing that a different sitting limitation applied.

Moreover, the Court need not address whether the ALJ fulfilled his obligation to

thoroughly review the evidence in the record since there was clearly a lack of

"substantial evidence" to support the ALJ's determinative six-hour sitting limitation.

In conclusion, the ALJ's finding that Ledbetter has the RFC to sit for six hours

per day was not supported by substantial evidence.  Accordingly, the Court vacates the

Administration's decision and remands the case to the Administration for further

proceedings consistent with this Order.

**E.    Remand**

To the extent the Court has not addressed the first argument asserted by

Ledbetter (*see* ECF No. 14 at 13–21), the Court expresses no opinion on the argument

and neither party should take the Court's silence as tacit approval or disapproval.  The

Court also does not intend by this opinion to suggest the result that should be reached

on remand.  Rather, the Court encourages the parties and the ALJ to fully consider the

evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387,

391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our

remand simply assures that the correct legal standards are invoked in reaching a

decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Administration's decision is VACATED and this case is REMANDED to the Administration for rehearing. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 18th day of January, 2019.

BY THE COURT:

William J. Martínez
United States District Judge